NATIONAL BOULEVARD BANK OF CHICAGO, Plaintiff-Appellee, *v.*
CARY C. JACKSON, Defendant-Appellant.

First District (1st Division)    No. 79-2444

Opinion filed January 26, 1981.

Roberta Strickler, of IIT/Chicago-Kent College of Law Legal Services Center, of Chicago, for appellant.

Norman P. Wexler, of Wexler, Wexler & Heller, Ltd., of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Cary C. Jackson, appeals from the deficiency judgment

of $1650.57, plus court costs, entered against him after repossession and resale of a used 1973 Pontiac.

On September 23, 1974, defendant entered into a retail installment contract with Seltzer Pontiac, Inc., for the purchase of a used 1973 Pontiac automobile. The price was $3410, less $500 down payment. The net balance of $2910, plus a finance charge of $1033.08, was to be paid monthly by defendant over a three-year period commencing November 10, 1974.

The installment contract was assigned to plaintiff, National Boulevard Bank. Defendant made only seven monthly payments. The transmission failed three times. Defendant paid for the repairs the first time; Seltzer Pontiac made the repairs the second time. After the final transmission failure in July 1975, defendant left the car at Seltzer Pontiac and stopped making payments.

On December 3, 1975, plaintiff repossessed the car. On December 5, 1975, plaintiff mailed a notice of resale to defendant via certified mail to his place of residence. The notice, containing an obvious typographical error as to the year, stated the sale was to be held on December 18, 1973. The post office receipt was stamped "unclaimed" and the notice returned to plaintiff.

Because no bidders appeared on the intended sale date of December 18, 1975, no sale was held. On March 19, 1976, the car was then sold for $1300 at a private sale to the highest of three bidders. No notice of sale was sent to defendant.

On November 5, 1979, judgment was entered in favor of plaintiff for $1650.57, plus court costs. This amount reflected the balance due, plus expenses incurred, less the unearned interest, unused insurance charge and the proceeds of sale.

Defendant contends that the notice of sale requirements of section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3)) were not satisfied because the original notice was returned "unclaimed" and no notice was attempted for the second scheduled sale. He argues that this lack of notice precludes the entry of a deficiency judgment. Alternatively, he argues that plaintiff did not prove the commercial reasonableness of the sale, thus not overcoming the presumption that the collateral was equal to the debt. Defendant also contends that the insurance terms of the contract did not meet the requirements of the Truth in Lending Act (15 U.S.C. §1605(b)(1976)) and Regulations Z (12 C.F.R. §226.4(a)(5)).

Section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3)) provides in applicable part:

"(3) Disposition of the collateral may be by public or private proceedings and may be by way of one or more contracts. Sale or

other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, * * *."

■■ It has consistently been held by this court that the creditor has the burden of proving proper notice of the sale when seeking a deficiency judgment on a balance due under an installment note. (*Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573; *National Republic Bank v. Proctor* (1978), 66 Ill. App. 3d 534, 383 N.E.2d 1310; *Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964.) Failure to provide adequate notice does not, however, absolutely bar a deficiency judgment, but raises the presumption that the value of the secured collateral is equal to the amount of the debt. In order to obtain a deficiency judgment, the creditor has the burden of rebutting the presumption and of proving that the amount collected from the sale was commercially reasonable. (*Tauber*; *General Foods Corp.*; *National Republic Bank*; *Chicago City Bank & Trust Co.*) Plaintiff here met that burden.

A deficiency judgment will be reversed on appeal only if it is against the manifest weight of the evidence. *General Foods Corp.*; *Prairie Vista, Inc. v. Casella* (1973), 12 Ill. App. 3d 34, 297 N.E.2d 385.

■■ It is clear from the record that defendant did not receive proper notice before the sale. The only notice attempted by plaintiff was by certified mail of a public sale to be held on December 18, 1975. That notice was returned to plaintiff by the post office marked "unclaimed." No sale was held on that date. No notice to the defendant of the private sale on March 19, 1976, was attempted by plaintiff. Thus plaintiff, in order to obtain a deficiency judgment, had the burden of proving that the sale was commercially reasonable. Plaintiff met this burden.

■■ Evidence of commercial reasonableness includes the manner, time and place of the sale, the condition of the car, the purchase price and the purchaser. (*General Foods Corp.*; Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3).) Plaintiff's evidence shows that the car was sold at a private sale in a recognized market for the used car industry. Bids were received from three automobile dealers. The highest bid of $1300 was accepted.

Defendant's evidence consisted principally of the "Red Book" value of the car at the time of the sale. This showed the retail value at $2600 and

the wholesale value at $2100. Without further evidence, defendant argues that the discrepancy between these values and the sales price show that the sale was not commercially reasonable. We do not agree.

While such values are acceptable evidence (*Tauber v. Johnson*), the price element alone does not establish the commercial reasonableness of a sale. (*Chicago City Bank & Trust Co.; In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 815, 303 N.E.2d 541.) Section 9—507(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—507(2)) states:

> "(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner."

This court has held that mere inadequacy of price in the absence of fraud, mistaken or illegal practice does not vitiate the sale. *Chicago City Bank & Trust Co.; In re Application of Bickel.*

On the record before us, plaintiff has established that the sale was conducted in a commercially reasonable manner. The judgment for plaintiff is not against the manifest weight of the evidence.

Defendant also argues that the contract violates the Truth in Lending Act (15 U.S.C. §1605(b) (1976)) and Regulation Z (12 C.F.R. §226.4(a)(5)) in that the term of the credit and disability insurance is not stated on the face of the contract; thus, the insurance charges were improperly included in the amount financed on the contract.

The contract signed by defendant is a standard retail installment contract. Defendant recognizes that the insurance costs are itemized separately pursuant to the Act and Regulation Z. He also admits that he made a written indication of a voluntary desire for such insurance. Item 4C of the contract contains the optional provisions for the insurance. A similar contract was analyzed and approved in *Philbeck v. Timmers Chevrolet, Inc.* (5th Cir. 1974), 499 F.2d 971. In that case, the term of the insurance was also missing from the face of the contract, but otherwise appeared to conform to Regulation Z. The court said (499 F.2d 971, 979):

> "Disclosure to the consumer of the 'insurance premium costs' is also disclosure to the consumer of the 'cost of insurance for the full term of the transaction,' * * *."

That is, if the term of the insurance is less than the term of the credit obligation, this would be so noted by an increased amount for the cost of insurance coverage for the full term. The court concluded (499 F.2d 971, 981):

> "[W]here, as in this case, the term of the insurance is the same as the term of the credit obligation, the premium for insurance shown on the face of the contract is the maximum possible cost of

insurance for the consumer and the coverage for that cost is the maximum possible. Thus, the consumer is fully informed and protected because he or she will not have to pay more than the insurance premium shown for insurance during the full term of the contract. To require that such disclosure be made on the face of a contract would not be meaningful disclosure such as would further the goals of the Truth in Lending Act."

We agree with this analysis. There was no violation of the Truth in Lending Act or of Regulation Z.

The order of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.